Good morning, Your Honours. Yuval Miller for Mr. Bhatnagar. Both appeals in this consolidated case come down to a fundamental distinction that was insufficiently appreciated by the District Court. The distinction between a plaintiff's testimony as a witness and the evidence that plaintiff presents as a party. I'd like to turn first to the Attorney's Fees Appeal because this Court has asked that we come prepared to discuss two cases related to that issue. Harris v. Maricopa County and the Supreme Court's grant of certiorari in Fox v. Vice. Both of those cases clearly support Mr. Bhatnagar in this case for many reasons, two of which are most important. First, both of those cases involve claims completely lacking in evidentiary support. In this case, Mr. Bhatnagar provided support not only for his retaliation claim as a whole, but also for the testimonial assertions he made regarding harassing phone calls in support of that claim. Indeed, the District Court found that there was sufficient evidence in the record for the jury to find for Mr. Bhatnagar on that issue. Second, as this Court held... That is to say, the District Court so found in allowing it to go to the jury? Yes, Your Honour. Yeah. Second, as this Court held in Harris v. Maricopa County, and this is a ruling that will not be affected by the Supreme Court's decision in Fox v. Vice, a District Court cannot split a claim in two and decide that one portion of that claim is groundless. The reason for this can be illustrated by a counterfactual in this case. What if the jury had decided that Mr. Bhatnagar should prevail on the retaliation claim? And the District Court found that the jury could find such. If the jury had found as much, Mr. Bhatnagar would be a prevailing party, and it would be clear that the District Court could not shift fees based on testimony he made about harassing phone calls. As the Supreme Court held in Hughes v. Rowe, the District Court cannot choose to shift fees based on whether or not a plaintiff ultimately prevails. A District Court can shift fees only if a claim as a whole is groundless, not as here, based on a post hoc assessment of whether testimony given in support of that claim is believed by the jury. I think you seem somehow to irritate the District Judge. Your Honor, I wasn't the counsel below, but it did seem that the District Judge was irritated. And he was rather offended by this testimony. Well, the call started at X time, and then all of a sudden some fairly convincing evidence comes out on cross. Oh, you mean those earlier anonymous harassing phone calls? Two points about that, Your Honor. First, it didn't come out on cross-examination. It actually came out when the defendants actually recalled the plaintiff to the stand in order to ask him about this issue, which they had not raised earlier. Second, as the District Court noted in the fees proceeding in denying Rule 11 sanctions, the defendants never asked the plaintiff about this issue throughout the case, never in deposition and never otherwise. And that's why this issue came out late in the case, because the defendants did not question him about it. Now, this un- Yes, as I understand it, he was fairly clear in testifying that these calls began as if, like, there had been no prior testimony, no prior calls, no anonymous harassing phone calls before that time. Your Honor, when he testified to that, first of all, that was before the issue of the earlier calls, which had happened some four or five months earlier, had come out in the recall examination. Yeah, I know. That's the problem. But it happened in the course of a cross-examination about the events of the DMV hearing where the officer intimidated him. The question was, did any of these calls occur prior to that date? And he said no, because he thought they were referring to the calls related to Officer Ingracia. He didn't think that the- He had been through two and a half months, three months of harassment by the police officer, of racial slurs that were levied at him by the police officer on the event- during the events of May 20, 2006, and so on. And these harassing calls, not only did he think that they came from the officer, both of his parents received phone calls that they believed came from the officer. The defense counsel believed that they came from the officer. And there were other corroborating witnesses that said that they came from the defense-from the officer. In addition, the officer snooped into Mr. Batnagar's personal records on a police database that he wasn't allowed to use except in the line of duty every time a hearing related to this case came up. And every time a hearing related to this case came up, he made harassing phone calls to both Mr. Batnagar's parents and to Mr. Batnagar. Let me just ask a question here, and it's based on the Harris case. Suppose that everything you say is true about what he thought, but it was really critical that there had been telephone calls before that date. Should this court then remand under Harris to the other court to say if it's part frivolous claim, part non-frivolous, the damages should be apportioned? No, Your Honor, because as the Harris court held, a claim cannot be split in two and one part of it be deemed groundless. The reason for this is clear. If the jury could have found that Mr. Batnagar prevailed on his retaliation claim, the district court would not have been able to shift fees to force Mr. Batnagar to pay the defendant's fees simply because there was testimony in the case that the court weighed credibility and determined was not credible. It was the jury's job to weigh the credibility. It was the jury's job to consider that testimony in light of all the evidence in the case and decide what actually occurred. The claim that was submitted to the jury was one retaliation claim, and that claim is the claim that the district court allowed to go to the jury and said there was sufficient evidence on. That's also the claim on which fees would have been shifted had there been fees shifted. But to shift fees on particular bits of testimony throughout the trial would allow a district court to then take bits of testimony throughout the seven-day trial and shift fees willy-nilly back and forth based on whether the district court thinks that each person is credible on different claims. This is not a case of clear perjury. He didn't even lie in this case. He was asked questions about intimidation in July of 2006 and then asked if the first time he received calls related to that issue was July 27, 2006, and he said yes. That was not a lie. Now, if this fees ruling were allowed to stand, plaintiffs would be chilled not only from bringing well-founded claims, like the well-founded claims Mr. Batnagar brought here as to the retaliation claim, but from testifying at all. You keep saying they're well-founded claims except for one thing, the jury found against them totally, right? That's true, Your Honor. So the jury says they're not well-founded at all. Your Honor, what the jury decided was that there wasn't a ponderance of the evidence to find the officer liable on those claims. The jury did not find that the claims were not well-founded. The district court specifically held that the claims were well-founded enough to go to the jury and No, the district court let it go to the jury, but that doesn't necessarily mean he made a finding like that. All he said is I'm going to let it go to the jury. Many district judges, and I'm speaking as a district judge, will let a case go to the jury so that in case it's reversed by the court of appeals, if I enter judgment without it going to the jury, I will have to send it and retry the case the jury has spoken. Your Honor, I appreciate that, but in this case, the district court actually entered a finding on the record that the jury could believe Mr. Batnagar based on his testimony alone, and the district court in making that ruling didn't even consider the corroborating witnesses that testified on his behalf, didn't even consider the Kletz records at that point when it was considering this issue. Although earlier when it considered whether this issue could go to the jury, it did consider the Kletz records. It did consider the fact that the officer entered, found Mr. Batnagar's personal information in the Kletz records prior to making harassing phone calls to him, and the jury could find in his favor. Now, it may be true that that doesn't, sending it to the jury doesn't necessarily mean as much, but in this case, the district court specifically found that it did. I'd like to turn to the unlawful detention claim because I would like to save about three minutes for rebuttal. But as to unlawful detention ---- Well, on that claim, since your time is limited, before the district court, Mr. Batnagar asserted that the seizure occurred outside of his car. On appeal, he now argues that the seizure occurred as he sat in his car, implicating a different subset of Fourth Amendment law that the district court didn't consider. Didn't he waive this issue? No, Your Honor. In fact, Mr. Batnagar's counsel below argued that the district court should consider all of the evidence in the record and specifically should consider the officer's testimony in coming to a conclusion about what Mr. Batnagar did or didn't see on that day. This comes down to the distinction that I pointed out at the beginning of this argument, and that's the distinction between the plaintiff's testimony as a witness and the evidence the plaintiff presents as a party. The testimony that the plaintiff presented as a witness, yes, was that he met the officer outside the car. But as a party, plaintiff's counsel and plaintiff as a party specifically testified that the officer's testimony should be considered under Rule 50 to come to a conclusion as to the issue. And this is the way that I would describe it. Mr. Batnagar testified as to what he recollected seeing or hearing on the night of May 20, 2006. That testimony was only part of the evidence that the jury needed to consider in deciding what Mr. Batnagar actually saw or heard on that date. Officer Ingracia testified to something completely different. He testified that he followed Mr. Batnagar into the gas station, turned on his emergency lights, ordered Mr. Batnagar to sit down, walked over to him and said, you've been pulled over, I pulled you over. With that testimony in mind, also remember that Mr. Batnagar testified that he felt intimidated and unfree to leave that night. He looked over and saw the police officer walking towards him. He may have been walking from a police car with emergency lights flashing in the background, but Mr. Batnagar only considered those lights subliminally. This is something for the jury to decide, whether those lights were on in the background, whether the officer was making commands at Mr. Batnagar, acting in an officious manner, ordering him to stop, ordering him to sit down. Whether Mr. Batnagar remembered that is not the issue. The issue is whether it happened. Now, if the story happened as the officer testified, was that a proper stop and a proper command? No, Your Honor. In fact, the defense... He's not entitled to stop somebody who looks as though he's in bad driving, that may be drunken driving, and to say, you sit there while I talk to you? Your Honor, his testimony about the fact that Mr. Batnagar, whether or not Mr. Batnagar engaged in bad driving, was testimony that would have been disregarded by the district court under Rule 50, because the district court must disregard all evidence favorable to the moving party that the jury is not required to believe. No, no, that's not the question I asked. I asked you the question, if we take the officer's statement or description of what happened as true, was that a proper stop? As the district court said in submitting it to the jury... Not exactly, Your Honor. As the district court said in submitting the issue to the jury, the jury could credit, not this issue, but other issues, jury could credit part of a witness's testimony to the court. That's not the question I asked. If all we had in front of us was the testimony of the officer, and we believe that testimony, is that a proper stop in detention? Your Honor... I think the answer is yes. The answer is yes, except that the defendants admitted in their brief that the officer did not stop him for an illegal U-turn. So at this point, we have a concession by the opposing party that the officer did not stop him for committing an illegal U-turn, which is what he put in his... So if this were to go back down, for example, his testimony would have to be tempered with the admission made here on appeal. I'd like to reserve the rest of my time for rebuttal. Okay. Thank you. Good morning, Your Honors. My name is Christopher Lustig. I am counsel for Deputy Jason Ingrassia. With me here today is Mr. James Fitzgerald, co-counsel and trial counsel for Deputy Ingrassia, as well as Janet Holmes, who was counsel for the County of Contra Costa and the City of San Ramon. Your Honors, I know the court asked us to be prepared to talk about Harris. There are just three quick points I'd like to make in addressing the unlawful detention claim before I get to the attorney's fees at Harris. It may revolve around Justice Nelson's point about waiver. There is a clear waiver in this case. In trial, the defendants raised the Rule 50 motion over a course of three days with respect to this unlawful detention claim. Over the course of three days, appellant's trial counsel never raised the notion that he was asserting a false arrest or unlawful detention on the basis of any order or the use of emergency lights. Never, ever said that. As a result, the court never had an opportunity to pass on the issue. Defendants were prejudiced because defendants never had an opportunity to address or respond to that issue. And this court doesn't have a full record on that issue of either the analysis or the facts. For those reasons, that argument should be waived. It's too late. One of the reasons why it was not raised is if you consider what the plaintiff's trial strategy was from the very beginning of this case, in fact, before this case. And his strategy from day one, from the first DMV hearing, was what I like to call the no-drive defense. The officer did not see me driving. And there's a, I think, a common misconception by some criminal defense attorneys that if an officer happens upon a scene and someone's out of the car and they didn't see driving, there's an element missing. And so you can't have a lawful arrest. But as was developed in the civil trial, vehicle code section 4300.5 allows an officer to form probable cause even if someone's outside the car when he arrives. And you can imagine a number of situations and reasons for why that is. If there's an accident or an officer finds somebody, like in this case, at the gas station that appears intoxicated, if he can link the individual to the car, then that's enough for probable cause. But from day one at the DMV hearing, appellant was stating, I was out of the car. I was out of the car. I was talking to a drunk woman at the gas station when the officer came up. I was going to pay for gas. I was walking to the cashier station. Repeatedly, over and over again, at the DMV hearing that he testified at, at his criminal proceedings, in pretrial declarations submitted, in trial testimony. And there are a line of examples in which he takes this position in order to support his claim that he was falsely arrested and unlawfully detained. Now, he's trying to make the argument after he's lost all those theories. And mind you, he presented at least three or four different theories to the district court. He claimed that his unlawful detention stemmed from the fact that there was a vehicle stop without probable cause. After it was established that the undisputed evidence showed that there was no vehicle stop, that he had stopped voluntarily at the gas station, that was done. After that, he claimed that when the officer came up and asked him questions about whether he'd been at the bar the night before, the court found that that was a consensual contact, no basis for unlawful detention. He also argued that when the officer asked for his license and didn't give it back right away, that constituted an unlawful detention. The court rejected that, too, because his license was expired. At least, maybe not his license license, but the license card that he gave showed that it was expired. So all these different theories were presented for the unlawful detention, all consistent with their false arrest claim, but all presented for the unlawful detention and they were all rejected. And never once over those three days does he raise the notion that they're relying upon this contradictory evidence in the record. Now, addressing the evidence specifically, it's really not there if the court gives a fair reading to the officer's testimony. There are two things that the appellant relies on in order to make the argument that there was a detention, and that is, one, the emergency lights, the officer's alleged use of the emergency lights, and two, the alleged order that the officer gave to Mr. Bhatnagar to sit in the car. The emergency lights. For any unlawful detention to occur, you need to have, it's a reasonable person standard, both from the officer's point of view and from the subject's point of view. In this case, even though there was some testimony about the officer using emergency lights, it was very indeterminate, very inconclusive as to when he used them. He knew for sure he didn't turn them on before he got in the gas station. He says a lot of times, I don't remember exactly when, sometime after I came in the gas station. So put his subjective motivation aside, the subject, Mr. Bhatnagar, claims all the way through he never saw the emergency lights, never, ever saw them. And so if he never saw the emergency lights, there's no way he could have submitted to the officer's show of authority or whatever you want to call it in order to trigger a detention. So the emergency lights don't help them because the undisputed evidence is that he did not see them. The second fact that they rely upon is the notion that the officer gave an order that he stay in the car. And the problem with that is that when you actually go and read the citation and you read the officer's testimony, it's not nearly as clear as that. It's more like he's testifying that he can't remember exactly what he said at first. He thinks he may have asked him to stay in the car. He never once uses the word order. He says, I may have asked him. And there's a difference between a police officer saying, would you please stay in the car and an order to stay in the car? If a police officer says to me, would you please stay in the car, I stay in the car. Well, I understand that, Your Honor. But under the law, a police officer can come and ask somebody questions at a car. Somebody can come up to the car and ask them questions. Were you drinking? Things like that. You can still have a consensual encounter when the officer says, do you mind stepping out of the car? It's a question. And there's nothing more. No, it's not. It's a polite way of saying step out of the car. Okay. I understand, Your Honor. If you read his testimony, if you give it a fair reading, he doesn't remember. It's inconclusive. That's what he's speculating about. And that's the speculation that the jury would have to rely upon in order to reach a decision in his favor. That version of events is extremely improbable, I would add. The version of events that plaintiff would have you believe here on appeal, that the officer did not see any driving at all, didn't see any driving, but goes into this gas station and turns on his lights and orders Mr. Botnagar to stay in the car for no reason. It's a very unlikely improbable set of events. And I think under those circumstances, under the Rule 50 analysis or the Motion for Summary Judgment analysis, there needs to be more than that in order to satisfy the substantial evidence standard. And it's not there. And I'll say one thing else about this, is that the officer's testimony did not favor the plaintiff at all throughout the trial. Not until every single other claim was lost. And only at that point could this claim have any traction, which would essentially have required Mr. Candapa, the trial attorney for the appellant, to come up to the jury and say, ladies and gentlemen, I know my client lied roughly 20 times, from the DMV hearing all the way through trial, about the sequence of events. But please believe him when he tells you that he did not make an illegal U-turn and this officer stopped him arbitrarily. I don't think any trial attorney in their right mind would make an argument like that, particularly in a situation here where Mr. Botnagar's credibility was so important to every other claim that was still going to the jury. You know, your time's running.  Yes, Your Honor. With respect to the attorney's fees, the main points I want to make are that, first of all, Judge Breyer, even without having the benefit of Harris, basically followed the mandate of Harris all the way down. He, when the attorney's fees motion was initially filed by the defendants, they were asking, Deputy Ingrassi was asking for something in the neighborhood of $200,000 in attorney's fees. The county had over $300,000 in attorney's fees. Judge Breyer said, No. No, you're only getting fees associated with your defense of the harassing calls claim. Subsequent to that, there were another set of declarations and exhibits filed regarding those fees. At this point, the defendants had tried to limit their request down to the judge's order, and they submitted a request for roughly $60,000 in fees for Deputy Ingrassi, around $40,000 for the county. And I'll point out something else, too, that the letters are not in the record, but in the declarations is a statement from Mr. Harvey, county counsel, stating or pointing out that process with appellant's counsel, she had agreed that $13,000 of the money going to Deputy Ingrassi was attributable directly to the harassing calls, and roughly $9,000 was attributable to the harassing calls for the county's claim. So there had already been some level of concession. But what Judge Breyer does is he takes this final declaration, what the parties had narrowed down to just the harassing calls fees, and he looks at that and he cuts it even more, down to the bone. He gives Ingrassi only $20,000 in fees that he associates with harassing calls. He gives the county and the city of San Ramon $12,000. And he very specifically spells out in his order, not just from the order, but even before the order, that this is for the harassing calls only. It's not even for the other components of the retaliation claim. There was a claim that there was another stop between the officer and the appellant and that that was part of the retaliation claim. There were other components there. He said, I'm not considering those. I'm only ordering fees with respect to these telephone calls because of the way that that situation came out. And we're not going to have to wait very long to see what the court says in Fox, because it may tell us things that will be relevant to the decision here. But I have trouble with your position, and maybe as a consequence with Judge Breyer's order, because it sounds as though he's awarding fees based on what he sees as perjury. I don't really like to say this, but it's true. Witnesses commit perjury all the time. And it's not customary to award fees for sort of splitting out the part of the case that's tied to perjury. I mean, this would be quite a different world if fees were available for the portion of the case that you had to defend based on somebody else's perjury. How do you respond to that? Well, Your Honor, I would. There was a lot of lying and perjury that went on in this case. And maybe some by your client. I don't know. But be that as it may, the court distinguished between different lies in this case. For example, Mr. Botnagar clearly lied to the officer and to the court about how much he had to drink. And there was a considerable amount of attorney's fees incurred in having to prove the drinking sequence and what alcohol was and refuting his testimony. We didn't get fees for that. But what I'm worried about is if we approve this order on the ground in which it's justified, that is to say it was perjury, what's to stop the district judge in another case, if this turns out to be an opinion, saying, well, you know, there's perjury. Perjury just shot through the whole case. I'm going to get fees, even though I sent the whole case to the jury. Your Honor, this was the linchpin of their harassment claim. This was his uncorroborated testimony. And appellate's counsel brings up some corroboration, but it's all phantom and semantics. It all came down to his testimony that these calls came in such and such a time. And that was basically all that was left of his case at that point in the trial. And this is an extraordinary case, not only because of the fact that the claims are groundless, but because of the bad faith. And Judge Breyer says, after the evidence comes out, he says, I find it stupefying. He says, there's no question there's a lot of perjury going on, without drawing lines, who's saying it. There's a lot of lying going on. And then he says, I'm shocked by the last revelation because it was concealed. It was concealed. That makes another big difference. I mean, there's perjury, but then there's using the perjury to press this claim all the way to a jury and concealing fundamentally devastating evidence the way he did. The definition of perjury is that it goes to a material point. I mean, if it's a lie that doesn't go to a material point, it's not perjury. And this went to the most fundamental point, because it was only his credibility. And in those remarks, Judge Breyer also mentioned that in 12 years, I've never seen anything like this. So something like that doesn't justify sanctions. And it's a fraction, Your Honor, of all the fees incurred by the defendants in this case. This $20,000 was less than 10%. And that, if we're looking at what were well-founded claims and not-founded claims, most of this stuff got kicked out on Rule 50, and everything else was taken, you know, away by the jury. So this was about all he had left, and the defendants only got between 10 and I think for the county, 3% of their fees. Okay. Let me ask about if we decide and we haven't decided to affirm the district court, do we need to do it under 42 U.S.C. 1988B, or can we do it under the court's inherent power to sanction for bad faith conduct? Well, Your Honor, I think the court of appeal has the power to affirm on any correct basis. And so I think you could affirm the order by the court either way, because in this, this wasn't just an example of a groundless, frivolous claim that was continued. This was something that was concealed with perjury and lies. So I think both, you know, the fact that you have this bad faith here, exceptionally, an exceptionally bad situation, you can probably award attorney's fees under either correct theory. Okay. Thank you, Your Honor. Thank you very much. Your Honors, I'd like to address Judge Nelson's question first about inherent power. The defendants waived that issue by never raising it below. The district court didn't raise it in its order. It ordered fee shifting under 1988, the motion that defendants brought. And therefore, this court should not affirm on a basis that the district court did not shift. No, but the basic rule is we can affirm on any ground. Yes, but the district court did not justify its ruling in any way as an inherent power sanction. Yeah, but that's the purpose of the we can affirm on any ground rule. Your Honor, I understand. But plaintiff hasn't had a chance to, hasn't had notice of that issue and hasn't had a chance to rebut an argument based on the inherent power of the district court. He's not had a chance to rebut it here? No, no. In the district court, the district court might not decide to sanction the plaintiff based on its inherent power. Oh, I bet I know what the district court would do. I'd like to address the unlawful detention claim for a moment because defendants raise over and over the fact that plaintiff made testimony as to certain points. The emergency lights, not having seen them, standing outside the car, that was just part of the evidence that the jury was to consider on that claim. But the court never let it go to the jury for the jury to determine that issue. Plaintiff's counsel specifically argued that the whole record should be considered, including Officer Ingracia's testimony. The plaintiff's counsel never argued that only Batnagar's testimony should be considered. If the court has any other questions, I'd like to address those before my time is up. Then in closing, I'd like to note that it may be improbable that a police officer would follow somebody into a gas station and effect an emergency stop when he hadn't seen an illegal violation, but that is exactly what this officer did here. In fact, Judge Treat of the Contra Costa Superior Court specifically ruled that the officer was trolling for drunk drivers. At 1.03 in the morning, he was across the street at the park. Five minutes later, he was across the street at the gas station, entering into his computer that he had stopped him for a DUI. Two days later, in his officer's report, he said that it was for an illegal U-turn. And today, on appeal at page 47 of the answering brief, defendants say that it is undisputed that the plaintiff was not detained for a U-turn violation. What is going on here? The jury was never allowed to decide. And this case should be remanded so that the jury can decide that question, and the fees ruling should be reversed. Thank you very much. Thank both sides for helpful arguments. The case of Batnagar v. Ingracia is now submitted for decision.
judges: Duffy, Nelson D. W., Fletcher W.